THE OVERSEERS OF PATERSON v. THE OVERSEERS OF BYRAM.

1. The place of birth is the place of settlement, until another settlement is obtained; and it remains the place of settlement of a married woman, when the place of her husband's settlement does not appear.

2. An order of removal to the last place of residence for six continuous months, under the 17th section of the act of 1846, as amended by act of 1852, must adjudge that such person has no legal settlement within the state.

3. Children under six years of age, living with their mother, are not to be separated from her, but may be removed with her to her settlement, without inquiry into or adjudication upon their settlement.

4. A warrant for removal should not issue until after an adjudication of the

Overseers of Paterson v. Overseers of Byram.

settlement, and some order or request has been made upon pauper to remove in compliance with it. (*Per* OGDEN, J.) (a)

The order of removal in this case was made by two justices of Sussex county, on the application of the overseers of the poor of the township of Byram, in that county, to remove Elizabeth Brooks and her four children—John, aged six years, Henry, aged four years, Mary, aged three years, and Edo, aged one year, to the township of Paterson. The order stated the application of the overseers, that the paupers had no settlement in Byram, and that they "are now become chargeable to said township of Byram," and then adjudicated in these words: " We, the said justices, upon due proof thereof made to us, as well upon the examination of the said Elizabeth Brooks upon oath, as otherwise relative to her place of residence for six months preceding her application for relief to the said overseer of the poor of the township of Byram aforesaid, and likewise upon due consideration had of the premises, do adjudge the same to be true : and we do likewise adjudge that said Elizabeth Brooks and her said children resided in the township of Paterson, in the county of Passaic, in the state of New Jersey, for six months preceding her said application for relief, and that the legal settlement of her, the said Elizabeth Brooks and her children, John Garrison, Henry, Edo, and Mary Ann, is in the said township of Paterson, in the county of Passaic, aforesaid." The order was dated September 1, 1849.

It appeared, by the evidence, that Elizabeth Brooks was born in the township of Acquackanonck, in the county of Passaic, in 1819 ; that she was married, in 1841, to Jonathan Brooks, whose legal settlement did not appear ; that since her marriage they have lived at Paterson for about six years, and had not lived in any other township for six months at one time ; they had lived for five months in Byram, and her husband had left her.

(a) The supplement of March 19, 1852, carefully omits the words "on neglect or refusal to comply with such order," which are in the acts of 1774 and 1846, which would obviate the necessity of such notice in future. And under the act of 1794, it was held that such notice was not necessary where the pauper was adjudged to be actually chargeable.

On appeal to Sussex sessions, the order was affirmed.

*Gledhill*, for plaintiffs in *certiorari*, took the following points:

1st. That section 17, act of 1846, (*Rev. Stat.* 886) applied only to persons who had no settlement in this state; the change made in the language of this section by the legislature, after report by the revisors, required change of construction.

Section 17 was taken from section 23, act 1774, (*Rev. Stat.* 44). The opening phrase in the latter is substantially like that in former, as far as our view is concerned; has been adjudicated to apply to persons having no settlement in the place where relief is required, though having settlement in the state.

The terms of section 17, act 1846, indicate that the legislature intended to afford means of relief to a class of poor persons not included in any express enactment of the legislature prior to 1845, *viz.* those having no settlement in the state.

Section 17 should be construed so as to effect that intent of the legislature, notwithstanding previous adjudications of the act of 1774.

2d. That it appeared, by the examination of the pauper, that she had settlement in the state, and none appearing on part of husband, who had deserted his family, she should have been sent there, and her children with her for nurture

No one appeared for Byram.

OGDEN, J. On the first day of September, 1849, Augustus G. King and Ira K. Johnson, two justices of the peace in the county of Sussex, in this state, made an order, under their hands and seals, addressed to a constable of the said county and to the overseers of the poor of the township of Paterson, directing the removal of one Elizabeth Brooks and of her four children, the eldest of whom was aged six years, and the youngest aged one year, from the township of Byram, in the county of Sussex, to the township of Paterson, in the county of Passaic.

The removals were accordingly made, and, on an appeal from the order by the township of Paterson, the sessions of

the county of Sussex affirmed the act of the two justices.   Dissatisfied with the proceedings, the appellants have brought the case by *certiorari* into this court, and the legality of the order of removal is now to be examined.

The jurisdiction of the two justices over the subject matter was conferred upon them, either by the 17th or by the 27th section of the " Act for the settlement and relief of the poor," found in *Rev. Stat.* 877.

It is contended by the plaintiffs in *certiorari* that the order is erroneous, whether it was founded upon the one or the other of those enactments.

In the 27th section, provision is made for the relief of a poor person having a legal settlement within the state of New Jersey.   If application be made to the overseers of the poor of a township for relief, by or for any poor person within the township, proceedings are directed, by that section, which secure aid, upon the adjudication and determination, by two justices of the peace, of the legal settlement of the poor person within the state.   If such settlement is found to be within the county where the relief is applied for, an order can be made for the removal of the person to the county poorhouse, if any there be, or if none, then to the township where the last legal settlement has been adjudicated to be ; if such settlement is found to be in any other county within the state, an appropriate order of removal is directed.

In the 17th section, which has a twofold purpose, construed by decisions which have been made upon language used in the 23d section of the act of 1774, similar to that employed in the first clause of this section, provision is made, upon information given by the overseers, for the removal of persons *likely to become chargeable* upon a township where they have no settlement, but who are settled elsewhere in the state.   The section also embraces cases of *application for relief* for persons who are not legally settled in the township applied to, and who may have no legal settlement in the state, and cases where the overseer has reason to believe that *such persons will become chargeable.*   By it, a new power is given to the justices, which requires them to examine the poor person,

and to take other testimony as to the place within the state where he or she had last resided for six consecutive months; and upon the justices determining that fact, the township wherein *such* residence had been permitted is declared liable as and for the place of settlement of such poor person, and provision is made for a removal thither.

The language of that section was obscure, and it seemed to introduce a new element into the doctrine of settlements, and to change the whole law in regard to removals. On the 19th of March, 1852, a supplemental act was appended, which went into immediate effect, repealing the 17th section last referred to, and substituting another enactment in lieu thereof, and providing that the act of 1846 should be construed and considered as if the said enactment of 1852 had been incorporated into said act, as the 17th section thereof.

The phraseology is peculiar. That supplement was designed to explain the 17th section of the original act, and to give a legislative construction to legislative language. It declares that the new section is substituted in lieu of the 17th section of the former act, and provides that the original act shall be construed and considered as it *would have been* if the new section had been enacted in 1846, instead of the said 17th section. (a)

Such having been the evident intention of the legislature, we are to test the correctness of the proceedings of the two justices in this case by the language of the law, as it now exists.

The 2d section of the act of March, 1852, (*Pam. Laws.* 254) authorizes an overseer of the poor of a township, who has reason to believe that a person within such township, who has not obtained a legal settlement therein according to the directions, true intent, and meaning of the act, is chargeable, or likely to become chargeable thereto, to make application to

(a) The retroactive effect was not designed by the *draftsman* of this supplement; it was intended only to govern the future construction of the act. The peculiar language of the first section, incorporating the second into the original act, (a common mode of amendment in New York) was intended to restore the provisions of the act of 1774, and to make the references in the subsequent part of the act of 1846 apply to this section, as amended. For example, the appeal granted in the 20th section of that act seemed only to apply to removals "made as aforesaid," referring to the 19th section, and not to section 27.— REPORTER.

two justices of the peace, and inform them thereof, who are empowered to examine the person, and to take testimony as to the last place of his or her legal settlement : and if such person has a legal settlement within the state, they are to make a warrant of removal to that place. But if the person has no legal settlement within this state, then the justices are to examine him or her as to the township wherein a continuous residence for six months had been permitted ; and if any such be found and adjudged, they, by a warrant, shall cause the person to be removed to the township within the state where he or she shall have last resided continuously for six months. Those proceedings are to follow upon information communicated to the justices, by or in behalf of the overseer of the poor, before any relief is asked by or for the poor person.

The 27th section of the act of 1846 contemplates cases of indigent persons applying for relief to an overseer of the township wherein they happen to be. In any such case the two justices are to examine the person, and they may take testimony as to the last place of legal settlement. If any such be adjudged and determined to be within the state, and the justices shall believe that public relief is necessary, they are required to make out an order of removal to such place, whether it be within or without the county.

Such being the sources of the jurisdiction for two justices of the peace to adjudicate and to remove, the only points here to be settled are—

*First.* Under which section did the justices of Sussex proceed ?

*Second.* Does the order, on its face, sufficiently show the jurisdiction ?

*Third.* Have they pursued the provisions and intent of the act of the legislature ?

The order accompanying the persons removed shows that the proceedings were intended to be taken under the 17th section of the act of 1846. It declares that information was given to them by the overseer of the poor of the township of Byram ; that the persons removed had no settlement in that township, nor had they a certificate showing them to be settled else-

where, and, also, that they were chargeable upon the public. It then sets out that an examination was made relative to the place of residence of the mother and children for six months preceding *her* application for relief to the overseer of Byram, and that the justices adjudged that she and her children resided in Paterson, in the county of Passaic, and state of New Jersey, for six months preceding her application for relief, and that the legal settlement of her and her children is in the said township of Paterson.

The only proof sent with the order of removal was the examination, under oath, of Mrs. Brooks. She stated, in it, that she was born in Acquackanonck, in Passaic county, (then Essex) on the 22d day of February, 1819, and was upwards of thirty years of age; that her maiden name was Post; that she married one John Brooks about eight years before, and had since that time lived in Paterson, excepting about a year, in intervals; but that she had not, since her marriage, lived in any place six months at a time away from Paterson; that the eldest child was six years old, and the youngest was one year old.

Her examination establishes some material facts, as connected with the merits of this case. It shows that the children were too young to be taken away from their mother. It shows that the mother, *prima facie*, had a settlement by birth in Acquackanonck, the place of her nativity, which settlement must remain, unless she since has gained another elsewhere.

There was no proof before the justices that her husband was lawfully settled in Paterson when they married, or that he ever acquired a settlement there: her presumptive settlement by birth therefore remains.

Upon the law applicable to this case, and from the facts, as far as ascertained, the justices ought to have continued and directed their examination and proofs more pointedly for discovering and determining the place of the last legal settlement of the poor person; and upon it they should have ascertained and adjudicated that she had *no legal* settlement within the state, before they sought for the place of her last continuous residence for six months. I am therefore of opinion that in this particular the order was erroneous, and should be quashed,

It was further objected, that the jurisdiction of the justices does not sufficiently appear upon the order, and, also, that they had no authority to remove the poor person by compulsion before she had been ordered and directed to go, and had neglected or refused to comply with such order.

The first branch of the objection is without force. An application to the justices by the overseer sufficiently appears, and hence the original warrant to bring the poor person before them was properly issued.

But the warrant or order for removal was *at least* premature. If the poor persons could lawfully have been sent to Paterson, the warrant of removal should not have been issued until after an adjudication was made upon the matter, and neglect or refusal to remove, in obedience to an order or request made by them upon their adjudication, had occurred.

Such preliminary action should appear in the order. As nothing of the kind is set forth upon the order complained of, the proceeding is essentially defective, and the order should, on that ground also, be quashed.

It is sufficient to state that the children were of too tender years to be separated from the mother; they must be with her for nurture. No inquiry was necessary respecting their legal settlement.

Let the judgment of the sessions of Sussex be reversed, and the order of removal be quashed, with costs.

NEVIUS, J., concurred in reversal.

CITED *in McCoy* v. *Newton*, 8 *Vr.* 136.